1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

ARMANDO J. BECERRA, et al,

CASE NO. 15cv2365-WQH-JMA

11

Plaintiffs,

ORDER

v.

12

GENERAL MOTORS LLC AND
DOES 1 through 100,

13

14

Defendant.

15

HAYES, Judge:

16

The matter before the Court is the Motion to Dismiss the Amended Complaint

17

filed by Defendant General Motors LLC ("Defendant"). (ECF No. 27).

18

**I. Introduction**

19

This case was initiated on October 19, 2015 when Plaintiffs Armando J. Becerra

20

and Guillermo Ruelas, on behalf of themselves and those similarly situated, filed a

21

Complaint. (ECF No. 1). On January 25, 2016, Defendant filed a motion to dismiss.

22

(ECF No. 15). On February 11, 2016 (ECF No. 17), and April 15, 2016 (ECF No. 22),

23

the Court issued orders granting Plaintiffs two extensions to file an amended complaint.

24

On April 29, 2016, Plaintiffs Armando J. Becerra, Guillermo Ruelas, Robert Stewart,

25

and Steve Wilson, on behalf of themselves and those similarly situated ("Plaintiffs")

26

filed the Amended Complaint. (ECF No. 23). On May 9, 2016, the Court issued an

27

order denying Defendant's motion to dismiss (ECF No. 15) as moot. (ECF No. 24).

28

On July 28, 2016, Defendant filed the Motion to Dismiss the Amended

Complaint.  (ECF No. 27).  On August 8, 2016 (ECF No. 29) and October 26, 2016 (ECF No. 33), the Court issued orders granting Plaintiffs two extensions to file a response to the Motion to Dismiss the Amended Complaint.  On November 2, 2016, Plaintiffs filed a response.  (ECF No. 34).  On December 15, 2016, the Court granted Defendant an extension to file a reply.  (ECF No. 36).  On December 30, 2016, Defendant filed a reply (ECF No. 37) and a Request for Judicial Notice (ECF No. 38).

**II. Allegations of the Amended Complaint (ECF No. 23)**

Plaintiffs allege that Defendant manufactured trucks that "were sold with inadequate headlights which do not illuminate the road well enough for safe night driving" and that "give[] drivers much less time to identify and react to other cars, pedestrians, or obstacles."  (ECF No. 23 at ¶ 1).  Plaintiffs allege that Defendant "has long known about the problem but has not notified consumers."  *Id.* at ¶ 4.  Plaintiffs allege that the vehicles at issue are "2014-2015 model year GMC Sierra Vehicles that were factory installed with a single filament bulb headlight system, including 2014-2015 model year GMC Sierra 1500, 2015 model year GMC Sierra 2500HD, and 2015 model year GMC Sierra 3500HD."  *Id.* at ¶ 18.  The Amended Complaint lists six individual Plaintiffs: Armando J. Becerra, who allegedly purchased his vehicle on or about August 14, 2013 in Escondido, California; Guillermo Ruelas, who allegedly purchased his vehicle in August 2013 in Bakersfield, California; Robert Stewart, who allegedly purchased his vehicle in Silsbee, Texas in May 2013; and Steve Wilson, who allegedly purchased his vehicle in Center, Texas in February 2014.  *Id.* at ¶¶ 9-12.

Plaintiffs allege that "the headlights are inadequate for safe night driving"  *Id.* at ¶¶ 19-31.  Plaintiffs allege that even when a driver switches to high beam headlights, "the lights still fail to adequately and safely illuminate the road.  At 60 mph, a driver has 250 feet of visibility, or less than three seconds to react and come to a stop. However, over 300 feet is typically needed to bring a vehicle to a stop from 60 miles an hour, if reaction time is included."  *Id.* at ¶ 31.

Plaintiffs allege that "[t]he lack of effectiveness of the headlights is due to

changes [Defendant] made in the bulbs, assembly, and operation of the headlights." *Id.*
at ¶ 32. "In earlier models, [Defendant] used a reflector-style headlight with two
independent headlight systems, one for high beams and one for low beams, each with
its own bulb, a lens, a reflector, housing and a voltage source. For the vehicles at issue
in this case, GM changed to a projector-style headlight with a single bulb, a smaller
reflector, two lenses, a shutter to switch between high and low beams and a single
voltage source." *Id.* at ¶¶ 33-34. Plaintiffs allege that Defendant's "new configuration
is much less effective because the shutter causes dark bands in the low beam
configuration[.]" *Id.* at ¶ 35.

Plaintiffs allege that Defendant "has admitted in its Technical Service Bulletins
[that] the voltage is insufficient." *Id.* Plaintiffs allege that as of March 7, 2016, the
database of the National Highway Traffic Safety Administration ("NHTSA") contains
121 "detailed consumer complaints about the inadequate headlights of the Vehicles."
*Id.* at ¶ 38. Plaintiffs allege the consumer complaints "detail the headlight performance
problems and difficulties concerning night time visibility when driving the Vehicles"
and "illustrate [Defendant's] recalcitrance and refusal to acknowledge and correct these
issues even when directly confronted and in the face of numerous complaints." *Id.* at
¶ 74. Plaintiffs allege that Defendant "has redesigned [its] headlights to a different
system for the 2016 model year trucks[,]" and "[i]t appears that there are currently zero
NHTSA complaints concerning the 2016 GMC Sierras." *Id.* at ¶ 41.

Plaintiffs allege that in March and June 2015, Defendant issued Technical Service
Bulletins to its dealerships stating that "Some customers may comment of poor
headlight performance when driving in very dark rural areas. While the headlights meet
all Federal Motor Vehicle Safety Standard requirements . . . customers may request
better headlight performance for these very dark rural areas." *Id.* at ¶¶ 42-43. Plaintiffs
allege that according to one of the Bulletins, Defendant "increased the voltage by .4
Volts in the new bulbs, but that customers have not found the increase to provide
adequate illumination" and "Plaintiffs who have had the voltage upgrade still

experience substandard illumination." *Id.* at ¶¶ 48-49. Plaintiffs allege that "[Defendant] and its dealerships were fully aware of the inadequacy of the headlights." *Id.* at ¶ 51. Plaintiffs allege that Defendant violated the Transportation Recall Enhancement, Accountability, and Documentation ("TREAD") Act and the relevant Federal Safety Standard set by NHTSA. *Id.* at ¶¶ 52-57.

Plaintiffs "bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of themselves and all others similarly situated as members of the proposed class, defined as: All current or former purchasers and lessees of one or more of the Vehicles who purchased or leased their Vehicles in the United States (other than for purposes of resale or distribution)." *Id.* at ¶ 75.

Plaintiffs bring the following causes of action: (1) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; (2) violations of the Consumers Legal Remedies Act Cal. Civ. Code § 1750, *et seq.* ("CLRA"); (3) violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, Unfair Competition Law ("UCL"); (4) breach of Song-Beverly Warranty Act (Express Warranty); (5) breach of Song-Beverly Warranty Act (Implied Warranty); (6) Breach of Implied Warranty of Merchantability, Tex. Bus. & Com. Code Ann. § 2.314; (7) Violation of Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.50; (8) "Unfair and Deceptive Acts and Practices Under The Various State Laws In Which Class Members Reside[;]" (9) Fraudulent Concealment; and (10) Unjust Enrichment.

Plaintiffs seek class certification and an order enjoining Defendant from continuing the unfair business practices alleged in the Amended Complaint. Plaintiffs seek an order from the Court requiring Defendant to institute a recall or otherwise repair the vehicles at issue. Plaintiffs seek actual damages and an award of attorneys' fees and costs.

### III. Motion to Dismiss

#### A. Request for Judicial Notice (ECF No. 38)

"As a general rule, a district court may not consider any material beyond the

pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).   There are "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Id.*   First, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).   Second, under the doctrine of incorporation by reference, courts may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation and quotation marks omitted).

Plaintiffs request that the Court take judicial notice of a 2007 National Highway Traffic Safety Administration Report to Congress, and a 2008 National Highway Traffic Safety Administration Research Findings Report.   (ECF No. 38).   The Court grants Defendant's Request for Judicial Notice (ECF No. 38), and the Court takes judicial notice of these documents – which are not subject to reasonable dispute over their authenticity.   *See* Fed. R. Evid. 201(b); *Lee*, 250 F.3d at 690; *Knievel*, 393 F.3d at 1076.

**B. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted[.]"   Fed. R. Civ. P. 12(b)(6).   Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"   Fed. R. Civ. P. 8(a)(2).   "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"   *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Additionally, claims sounding in fraud must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). Rule 9(b) "requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

**C. Analysis**

## 1. Legally Cognizable Injury

Defendant contends this action should be dismissed because Plaintiffs have not alleged any injury or damages that would entitle them to relief. Defendant contends that each of Plaintiffs' claims require a showing of a cognizable injury. Defendant contends that Plaintiffs fail to allege that the "headlights malfunction, fail to operate as designed, or violate any applicable legal standard." (ECF No. 27-1 at 16). Defendant contends that a product defect claim requires a showing of an actual product malfunction, or a manifested defect in the product. Defendant contends that Plaintiffs' "vague and general assertions of damages" are insufficient to state a claim for any of their causes of action. *Id.* at 18. Defendant contends that Plaintiffs' allegations concerning risk of future harm prevent a finding that Plaintiffs have suffered a legally cognizable injury.

Plaintiffs contend that they have suffered damages in the form of economic harm and loss of usefulness of the vehicles, and exposure to an increased risk of automobile accidents. Plaintiffs contend that the headlights are defective because they are too dim for safe driving, and the alleged "defect manifests every time the headlights are turned on." (ECF No. 34 at 14).

Plaintiffs cannot maintain their causes of actions without alleging a legally cognizable injury.[1] The Court of Appeals has rejected a finding of cognizable injury when "[t]he risk of injury the plaintiffs allege is not concrete and particularized *as to themselves.*" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009). In *Birdsong,*

---

[1] *See* 15 U.S.C. § 2310(d)(1) (Magnuson-Moss Warranty Act requires "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter"); Cal. Civ. Code § 1780 (CLRA requires showing of "any damage"); Cal. Bus. & Prof. Code § 17204 (UCL claim requires a showing of "injury in fact"); *In re Hydrocyut Marketing and Sales Practices Litig.*, No. 09MD2087–BTM (AJB), 2010 WL 2839480, at *2 (S.D. Cal. July 20, 2010) (Moskowitz, J.) (claim for express warranty requires that "the breach caused injury to the plaintiff"); *Isip v. Mercedes-Benz USA, LLC*, 65 Cal. Rptr.3d 695, 698 (Cal. Ct. App. 2007) (damages required for a breach of the implied warranty of merchantability); Tex. Bus. & Com. § 17.50(a) (DTPA requires showing of "economic damages or damages for mental anguish"); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) ("a claim for fraudulent concealment requires that . . . the plaintiff must have sustained damage") (citation omitted).

1    the plaintiffs failed to plead a cognizable injury when they claimed  they would suffer

2    hearing loss from using an iPod music player.  *Id.*  The Court of Appeals found that

3    "[a]t most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to

4    other unidentified iPod users who might choose to use their iPods in an unsafe manner"

5    by raising the volume to a hazardous level.  *Id.*  In this case, Plaintiffs allege that when

6    they operate the vehicles, Plaintiffs have no choice but to utilize the allegedly dim

7    headlights; for example, Plaintiffs allege that "the lights still fail to adequately and

8    safely illuminate the road" even if a driver switches from low beams to high beams.

9    (ECF No. 23 at ¶ 31).

10    Defendant relies on *Birdsong* to contend that as a matter of law, a product defect

11    cause of action cannot be satisfied without a showing of a "actual product malfunction

12    or manifested defect."  (ECF No. 27-1 at 16) (*citing Birdsong*, 590 F.3d at 961).  In

13    *Birdsong*, the Court of Appeals found that any injury to the plaintiffs was merely

14    "hypothetical" because the iPod devices "have the 'capability' of producing unsafe

15    levels of sound and that consumers 'may' listen to their iPods at unsafe levels combined

16    with an 'ability' to listen for long periods of time."  590 F.3d at 961.  In this case,

17    Plaintiffs allege that the vehicles provide unsafe lighting conditions whenever they are

18    engaged in a dark area. (ECF No. 23 at ¶ 1). While Plaintiffs "may" choose to use their

19    headlights at any time, the threat of injury in this case is not hypothetical because

20    California state law requires Plaintiffs to use headlights while driving in the dark.

21    *Birdsong*, 590 F.3d at 961; *see* Cal. Veh. Code § 24400(b) ("A motor vehicle . . . shall

22    be operated during darkness . . . with at least two lighted headlamps").

23    Further, Plaintiffs have pled facts sufficient to support an inference that they did

24    not receive the benefit of their bargain with Defendant.  *See Tae Hee Lee v. Toyota*

25    *Motor Sales, U.S.A., Inc.*, 992 F. Supp.2d 962, 972 (C.D. Cal. 2014) ("There can be no

26    serious dispute that a purchaser of a product who receives the benefit of his bargain has

27    not suffered . . . injury-in-fact traceable to the defendant's conduct."). When Plaintiffs

28    sought to purchase a vehicle, "[s]afe and functional headlights were material" to that

decision.  (ECF No. 23 at ¶ 17).  Plaintiffs allege that the brightness of the headlights have "lead[] to difficulty spotting any pedestrians, animals, signage, and road shoulder lines." *Id.* at ¶ 20.  Plaintiffs allege that after several individual Plaintiffs experienced driving in the evening with the headlights, these drivers purchased new bulbs and sought to trade in their vehicles. *Id.* at ¶¶ 9-11.  Plaintiffs also allege that the headlights remained too dim even after switching to high beam headlights; this factual allegation further supports Plaintiffs' injury claim.  (ECF No. 23 at ¶ 31). *See Tae Hee Lee*, 992 F. Supp.2d at 972 (declining to find injury because despite alleged defect, car brakes would still "automatically slow the vehicle in the event of an unavoidable collision").

Plaintiffs have pled facts sufficient to support an inference that they suffered a legally cognizable injury in being prevented from properly observing signage and pedestrians while driving the vehicles in dark or rural areas. *See Tae Hee Lee*, 992 F. Supp.2d at 972 (finding the plaintiffs failed to allege economic injury "because they have not had any negative experience with" allegedly defective anti-lock brakes, and the brakes worked properly "in the event of an unavoidable collision"); *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 915 F. Supp.2d 1151, 1159 (C.D. Cal. 2013) (finding the plaintiff's "benefit-of-the-bargain argument" failed because the plaintiff "had no problem with the braking performance of his vehicle" and drove "without incident.").  The Court concludes that Plaintiffs have alleged facts sufficient to support the conclusion that they suffered a legally cognizable injury.

**2. Fraud**

Defendant contends that Plaintiffs' fraud-based claims must be dismissed because Plaintiffs have failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Defendant contends that Plaintiffs do not allege facts demonstrating that Defendant "concealed anything, whether intentionally or not." (ECF No. 27-1 at 21).  Defendant contends that it could not have hidden a defect because "headlamp brightness is something that is readily observable to potential customers before they make their purchase, particularly customers who might view headlamp

brightness as material to their buying decision."  (ECF No. 37 at 11).

Plaintiffs contend that Defendant had exclusive knowledge of the defect because exclusivity can be established if a party "had 'superior' knowledge of the defect." (ECF No. 34 at 21) (citation omitted).  Plaintiffs contend that they "may not have noticed any problems with the headlights until they attempted to drive in the dark."  *Id.*  Plaintiffs contend that Defendant concealed the defect because it was aware of the defect and took "ineffective measures" to address it.  *Id.* at 22.

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Tomek v. Apple Inc.*, 636 Fed. Appx. 712, 713 (9th Cir. 2016) (quoting *Vess*, 317 F.3d at 1106).

Plaintiffs' claims under the CLRA, UCL, and DTPA, in addition to their fraudulent misrepresentation claims, sound in fraud because Plaintiffs have alleged "a unified course of fraudulent conduct and rely entirely on that course of conduct" in bringing each of these claims.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Vess*, 317 F.3d at 1103-04 (finding that when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to . . . 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).").  "A fraud-based omission claim under the UCL and CLRA 'must be contrary to a representation actually made by the defendant, or an omission of fact the defendant was obliged to disclose.'"  *Huntzinger v. Aqua Lung America, Inc.*, Case No. 15cv1146 WQH (KSC), 2015 WL 8664284, at *8 (S.D. Cal. Dec. 10, 2015) (Hayes, J.) (quoting *In re Sony Gaming Networks*, 996 F. Supp.2d 942, 991 (S.D. Cal. 2014) (Battaglia, J.)).

"A duty to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact." *In re Sony Gaming Networks*, 996 F. Supp.2d at 991.

"[I]n a case where fraud is not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Vess*, 317 F.3d at 1105. "While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct" and "[i]n that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1125. "Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Id.* at 1127.

Plaintiffs allege that "Defendant deals in automobiles and holds itself out as having knowledge and skill in the design and manufacture of automobiles." (ECF No. 23 at ¶ 16). Plaintiffs allege the headlights are unsafe for nighttime driving. *Id.* at ¶ 1. Plaintiffs allege that "Defendant knew about the inherent headlight system defect in the Vehicles at all relevant times." *Id.* at ¶ 216. Plaintiffs allege that Defendant's knowledge was based on customer complaints, customer efforts to seek repairs from Defendant, and Defendant's issuance of several Bulletins concerning the headlights. *Id.* at ¶¶ 42-43, 74.

Defendant allegedly issued two technical service Bulletins to its dealerships in March and June 2015 concerning headlight brightness. (ECF No. 23 at ¶ 42). Plaintiffs allege these Bulletins state that "[s]ome customers may comment of poor headlight performance when driving in very dark rural areas." *Id.* at ¶ 43. While these Bulletins were issued after the named Plaintiffs purchased the allegedly-defective vehicles, the

Court finds that Plaintiffs have alleged sufficient facts to support a plausible inference that Defendant had knowledge of the defect at the time of the sales. *See also Mui Ho v. Toyota Motor Corp.*, 931 F. Supp.2d 987, 998 (N.D. Cal. 2013) (finding exclusive knowledge satisfied by allegations of "early consumer complaints about the defect to Defendants' dealers who are their agents for vehicle repairs"); *Falco v. Nissan N. America Inc.*, No. CV 13–00686 DDP (MANx), 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013) (allegations of service Bulletins issued by the defendant in 2007 "permit plausible inferences that [the defendant] was aware of the defect at the time they sold the vehicles in 2005 and 2006");

Further, Plaintiffs have alleged that within a reasonable time after purchasing the vehicles, Plaintiffs discovered and complained about the performance of the headlights. In *Gray v. Toyota Motor Sales, U.S.A.*, the court declined to find that the defendant manufacturer had exclusive knowledge of a defect relating to the miles-per-gallon rate of certain vehicles. No. CV 08–1690 PSG (JCx), 2012 WL 313703, at *9 (C.D. Cal. Jan. 23, 2012). The court found that the vehicles' "real-world [miles-per-gallon] can be readily and immediately observed by a layman" and the defendant's "knowledge of its real world fuel performance ceased to be 'exclusive'" when "the first [vehicle] was driven off the lot[.]" *Id.* Unlike in *Gray*, Plaintiffs in this case did not discover the alleged defect until driving in dark – and oftentimes rural – areas. (ECF No. 23 at ¶¶ 1, 12, 43). The Court permits the plausible inference that "headlamp brightness is" not "something that is readily observable to potential customers before they make their purchase[.]" (ECF No. 37 at 11). The Court concludes that Plaintiffs have pled sufficient facts to put Defendant on notice of their claims under the requirements of Rule 9(b). *See Huntzinger*, 2015 WL 8664284 at *8 (finding the plaintiff pled sufficient factual allegations to satisfy Rule 9(b) and "to support an inference that the Defendant knew of the defects"). Defendant's motion to dismiss Plaintiffs' fraud-based claims on the ground that Plaintiffs have failed to comply with Rule 9(b) is denied.

**3. Safe Harbor Doctrine**

Defendant contends that Plaintiffs cannot maintain CLRA and UCL claims because they fall into California's safe harbor doctrine – which prevents general unfair competition claims. Defendant contends that "[f]ederal and state regulations govern the design, placement and output of vehicle headlights[,]" and Plaintiffs have not alleged any violation of these standards. (ECF No. 27-1 at 26). Defendant contends that "[a] practice is not actionable under either the UCL or the CLRA if it is authorized by specific legislation." *Id.* Plaintiffs contend that the federal and state regulations Defendant relies on for its safe harbor argument allow remedies under other statutes – including the CLRA and UCL.

"When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999); *cf. Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986) ("a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation," cannot serve as the basis for federal question jurisdiction). The Supreme Court of California has stated that the scope of the UCL "is not unlimited" because "[s]pecific legislation may limit the judiciary's power to declare conduct unfair." *Cel-Tech*, 973 P.2d at 541. "When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id.* An action under the CLRA can be limited by a safe harbor as well. *See Bourgi v. West Covina Motors, Inc.*, 83 Cal. Rptr.3d 758, 766 (Cal. Ct. App. 2008) (finding "the provisions of the CLRA must be read together with the safe harbor provision" of a California statute); *Alvarez v. Chevron Corp.*, 2009 WL 5552497, No. CV 09–3343–GHK (Cwx), at *6 (C.D. Cal. Sept. 30, 2009) ("As with the UCL, specific legislation on point may create a 'safe harbor' defense to the more general prohibitions of the CLRA."). The safe harbor doctrine will prevent CLRA or UCL claims if separate legislation "actually 'bar[s]' the action or clearly permit[s] the conduct." *Cel-Tech*, 973 P.2d at 541.

Defendant identifies one federal and one state regulation that regulate the adequacy of motor vehicle headlights.  (ECF No. 27-1 at 26); *see* 49 C.F.R. § 571.108 (2016); Cal. Veh. Code § 26101.  However, Defendant does not identify any regulation or statute that prevents Plaintiffs from pursuing CLRA or UCL claims in federal court, or that otherwise operate to "'bar' th[is] action[.]" *Cel-Tech*, 973 P.2d at 541.  Further, one federal statute that Plaintiffs allege Defendant violated contains another provision that states that "[a] remedy under [the statute] is in addition to other rights and remedies under other laws of the United States or a State."  49 U.S.C. § 30103(d); ECF No. 23 at ¶ 52.  Defendant's motion to dismiss Plaintiffs' CLRA and UCL claims based on California's safe harbor doctrine is denied.

**4. CLRA**

Defendant contends that Plaintiffs' CLRA claim fails because Plaintiffs do not identify a specific statement that was likely to mislead a reasonable consumer. Defendant contends that Plaintiffs' only allegation of a misleading statement "is [Plaintiffs'] vague allegation" concerning Defendant's promotional materials.  (ECF No. 27-1 at 24).  Defendant contends that Plaintiffs do not dispute the accuracy of any specific statement made by Defendant.   Plaintiffs contend their allegation that Defendant violated the TREAD Act by failing to disclose the alleged defect "gives rise to a CLRA claim."  (ECF No. 34 at 26).  Plaintiffs contend that Defendant's alleged TREAD Act violation supports a CLRA claim "regardless of any affirmative misrepresentation[.]" *Id.*

The CLRA applies to every transaction that results in the sale of goods to a consumer, and the statute prohibits various unfair or deceptive acts.  Cal. Civ. Code § 1770(a).  The statute prohibits, in relevant part, "[r]epresenting that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . are of a particular standard, quality, or grade," and "[a]dvertising goods or services with intent not to sell them as advertised."  Cal. Civ. Code §§ 1770(a)(5); (a)(7); (a)(9).  The CLRA imposes liability on a party that omits a material fact to a

consumer, defined as a fact that "a reasonable consumer would deem . . . important" and "would certainly attach importance to the disclosure of[.]" *Collins v. eMachines, Inc.*, 134 Cal. Rptr.3d 588, 593-94 (Cal. Ct. App. 2011) (citation omitted). Under the statute, omission of a material fact is actionable "when the defendant had exclusive knowledge of material facts not known to the plaintiff[.]" *LiMandri v. Judkins*, 60 Cal. Rptr.2d 539, 543 (Cal. Ct. App. 1997). To pursue a fraudulent omission claim under the CLRA, "California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).

A duty to disclose a material fact may arise out of factual allegations of "any safety concerns posed by the defect." *Daugherty v. American Honda Motor Co., Inc.*, 51 Cal. Rptr.3d 118, 127 (Cal. Ct. App. 2006). The risk of a safety issue arising from a defect, without an allegation of physical injury, may constitute a material fact. *See Mui Ho*, 931 F. Supp.2d at 997 (holding it is "a basic rule of California law" that "a fact can give rise to a duty to disclose and an actionable omission if it implicates safety concerns that a reasonable consumer would find material."); *Falk v. General Motors Corp.*, 496 F. Supp.2d 1088, 1096 (N.D. Cal. 2007) (finding allegedly-defective speedometer is "material to the reasonable consumer, driver and passenger" because it may "lead to traveling at unsafe speeds"). The Court finds that Plaintiffs have pled facts sufficient to support the conclusion that the alleged defect in the headlights concerned a safety risk that Plaintiffs would find material in purchasing a motor vehicle.

Plaintiffs allege that Defendant "and its dealerships were fully aware of the inadequacy of the headlights." (ECF No. 23 at ¶ 51). Plaintiffs allege Defendant was aware of these concerns based upon customer complaints and Bulletins issued by Defendant in March and June 2015, and these concerns "warrant . . . notification to the government and consumers" under the TREAD Act. *Id.* at ¶¶ 38-50, 53. The Court concludes that Plaintiffs' allegation of customer complaints over the headlights is sufficient to support a plausible inference that Defendant had knowledge of the defect

at the time of the sales. *See supra* section III.C.2.

Further, Plaintiffs allege that under federal law, the "headlight safety concerns" raised by Plaintiffs "warrant[ed] . . . notification to the government and consumers" pursuant to the TREAD Act. (ECF No. 23 at ¶ 51-53). The TREAD Act was enacted by Congress in 2000, and, in relevant part, requires that a motor vehicle manufacturer must notify the Secretary of Transportation upon learning of a defect that relates to motor vehicle safety. 49 U.S.C. § 30118(c); *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1120 (9th Cir. 2003) (Kozinski, C.J., dissenting from denial of rehearing en banc). The Court finds that Plaintiffs have alleged sufficient facts to establish a CLRA violation based upon the allegation that Defendant had a duty to notify the Secretary of Transportation, pursuant to the TREAD Act, upon receiving numerous complaints about the headlights. 49 U.S.C. § 30118(c)(1-2). *See also In re Toyota Motor Corp.*, 790 F. Supp.2d 1152, 1172-73 (C.D. Cal. 2011) (finding that an alleged TREAD Act violation was a sufficient basis for a "a CLRA claim based on fraudulent omissions."). Defendant's motion to dismiss Plaintiffs' CLRA claim is denied.

**5. UCL**

Defendant contends that Plaintiffs have failed to identify fraudulent, unfair, or unlawful conduct. Defendant contends that Plaintiffs have failed to identify an unfair business practice because the "vehicles' headlights operated exactly as described, and the effectiveness of the headlights was easily discernable to any prospective buyer." (ECF No. 27-1 at 25). Defendant contends that Plaintiffs have failed to identify unlawful conduct because Plaintiffs have failed to adequately plead a CLRA violation.

Plaintiffs contend that Defendant's conduct was fraudulent because Defendant failed to disclose to customers that its headlights were unsuitable for safe night driving. Plaintiffs contend that Defendant's conduct was "'unfair' because it violates the policies underlying the federal headlight regulations and safety reporting requirements, including the TREAD Act." (ECF No. 34 at 27). Plaintiffs contend that Defendant's

1    conduct was unlawful because Plaintiffs have sufficiently pled violations of the CLRA,

2    a federal motor vehicle safety standard, and breaches of express and implied warranty.

3        The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent

4    business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal.

5    Bus. & Prof. Code § 17200.  The purpose of the UCL "is to protect both consumers and

6    competitors by promoting fair competition in commercial markets for goods and

7    services." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002).  To establish standing

8    under the UCL, a consumer needs to establish that "(1) the defendant made a false

9    representation about a product, (2) the consumer purchased the product in reliance on

10   the misrepresentation, and (3) he would not have purchased the product otherwise."

11   *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1109 (9th Cir. 2013), *as amended on denial*

12   *of reh'g and suggestion of reh'g en banc* (July 8, 2013) (citation omitted).

13       The Court finds Plaintiffs' allegation that Defendant concealed a material defect

14   sufficient to support a reasonable inference that Plaintiffs relied on the alleged non-

15   disclosure in deciding to purchase the vehicles.  *See supra* section III.C.4; ECF No. 23

16   at ¶ 220; *see also Huntzinger*, 2015 WL 8664284, at *6 (finding an allegation of non-

17   disclosure was "sufficient to establish standing [under the UCL] if supported by

18   reasonable factual inferences.").  The Court finds that Plaintiffs have standing to bring

19   their UCL claim.

20       The UCL's unlawful prong "permits violations of other laws to be treated as

21   unfair competition that is independently actionable." *Id.*  The statute applies to

22   "anything that can properly be called a business practice and that at the same time is

23   forbidden by law . . . be it civil, criminal, federal, state[.]" *Sybersound Records, Inc.*

24   *v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (citation omitted).  Having found

25   that Plaintiffs adequately alleged a CLRA claim against Defendant, the Court concludes

26   Plaintiffs have adequately alleged a claim against Defendant for "unlawful" conduct in

27   violation of the UCL;  *see Herron v. Best Buy Co. Inc.*, 924 F. Supp.2d 1161, 1177

28   (E.D. Cal. 2013) ("CLRA violations may serve as the predicate for 'unlawful' business

1    practice actions under the UCL.").

2        The test for liability under the UCL's "unfair" prong remains "in flux." *Lozano*
3    *v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Prior to 1999, courts
4    held that a business practice under the UCL is considered "unfair . . . when it offends
5    an established public policy or when the practice is immoral, unethical, oppressive,
6    unscrupulous or substantially injurious to consumers." *S. Bay. Chevrolet v. Gen.*
7    *Motors Acceptance Corp.*, 85 Cal. Rptr.2d 301, 316 (Cal. Ct. App. 1999) (citation
8    omitted). Under this approach, courts consider the business practice's "impact on its
9    alleged victim, balanced against the reasons, justifications and motives of the alleged
10   wrongdoer[,]" and "weigh the utility of the defendant's conduct against the gravity of
11   the harm to the alleged victim[.]" *McKell v. Washington Mut., Inc.*, 49 Cal. Rptr.3d
12   227, 240 (Cal. Ct. App. 2006). However, the Supreme Court of California rejected this
13   approach in an anticompetitive practices case, and held that an "unfair" business
14   practice must "must be tethered to a constitutional or statutory provision or a regulation
15   carrying out statutory policy." *Cel-Tech*, 973 P.2d at 543. While the *Cel-Tech* court
16   disapproved of the previous balancing approach, it stated that "[n]othing we say relates
17   to actions by consumers[.]" *Id.* at 544 n.12. Following *Cel-Tech*, a split of authority
18   developed concerning the "unfair" prong of the UCL. *See Bardin v. Daimlerchrysler*
19   *Corp.*, 39 Cal. Rptr.3d 634, 639-43 (Cal. Ct. App. 2006) (reviewing split). Without
20   further guidance on the "unfair" prong, courts have applied both tests. *See In re*
21   *Seagate Tech. LLC Litig.*, Case No. 16-cv-00523-JCS, 2017 WL 528398, at *16 (N.D.
22   Cal. Feb. 9, 2017) ("Absent guidance from the California courts about the proper
23   definition of an unfair business practice, federal courts have applied both tests.")
24   (citation omitted).

25       In this case, the Amended Complaint alleges sufficient facts to support a
26   conclusion that Defendant violated the "unfair" prong of the UCL under either test. The
27   Court finds that Plaintiffs have adequately alleged that Defendant's conduct violated
28   established public policy, and that this violation allegedly caused Plaintiffs to suffer an

injury.  Courts have recognized that automobile safety and disclosing safety hazards to consumers are each important policy goals.  *See Mui Ho*, 931 F. Supp.2d at 1000 ("failing to provide safety information is a practice that violates public policy") (citation omitted).  The stated purpose of the federal standard used to regulate motor vehicle headlights

> is to reduce traffic accidents and deaths and injuries resulting from traffic accidents, by providing adequate illumination of the roadway, and by enhancing the conspicuity of motor vehicles on the public roads so that their presence is perceived and their signals understood, both in daylight and in darkness or other conditions of reduced visibility.

49 C.F.R. § 571.108 (2016).  Further, the Court finds that the Amended Complaint alleges an "unfair" business practice claim that is tethered to a legislatively declared policy.  *Cel-Tech*, 973 P.2d at 543.  *See* ECF No. 23 at ¶¶ 52-57 (alleging violations of the TREAD Act and a Federal Safety Standard set by the National Highway Traffic Safety Administration).

To state a claim under the fraudulent prong of the UCL, Plaintiffs must adequately plead a business practice "in which members of the public are likely to be deceived."  *Morgan v. AT&T Wireless Servs., Inc.*, 99 Cal. Rptr.3d 768, 784 (Cal. Ct. App. 2009) (citation omitted).  The standard under both the CLRA and the "fraudulent" prong of the UCL is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue.  *Dorfman v. Nutramax Labs.*, No. 13cv0873 WQH (RBB), 2013 WL 5353043, at *10 (S.D. Cal. Sept. 23, 2013) (Hayes, J.).  The Court has concluded that Plaintiffs adequately alleged a CLRA claim against Defendant based on an allegation of fraudulent omission.  Therefore, the Court finds that Plaintiffs have pled sufficient facts to support the conclusion that Defendant violated the fraudulent prong of the UCL; *see also Mui Ho*, 931 F. Supp.2d at 1000.  Defendant's motion to dismiss Plaintiffs' UCL claim is denied.

**6. Breach of Warranty Claims**

**i. Song-Beverly Consumer Warranty Act: Breach of Express**

1   **Warranty**

2   Defendant contends that Plaintiffs' claim for breach of express warranty fails

3   because Plaintiffs do not describe the terms or coverage of the alleged warranty.

4   Plaintiffs contend that the vehicles were equipped with a warranty whereby Defendant

5   agreed to "repair, replace, or adjust defective parts on the Vehicles."  (ECF No. 34 at

6   24) (citing ECF No. 23 at ¶ 131).  Plaintiffs contend that Defendant failed to repair or

7   remedy the alleged headlight defect, and Defendant refused to honor the limited

8   warranty as to two Plaintiffs.

9   The Song-Beverly Consumer Warranty Act provides, in relevant part, that

10   "nothing in this chapter shall affect the right of the manufacturer, distributor, or retailer

11   to make express warranties with respect to consumer goods."  Cal. Civ. Code § 1793.

12   "[T]o plead a cause of action for breach of express warranty, one must allege the exact

13   terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that

14   warranty which proximately causes plaintiff injury."  *Williams v. Beechnut Nutrition*

15   *Corp.*, 229 Cal. Rptr. 605, 608 (Cal. Ct. App. 1986); *Daniel v. Ford Motor Co.*, 806

16   F.3d 1217, 1223-24 (9th Cir. 2015) (reviewing text of express warranty to address claim

17   for breach).  "To prevail on a theory of breach of express warranty, [the plaintiffs] must

18   prove that [the defendant] made affirmations of fact or promises that became part of the

19   basis of the bargain."  *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir.

20   1997).

21   In the Amended Complaint, Plaintiffs allege that "[t]hrough Limited New

22   Vehicle Warranties, Defendant expressly warranted to California Plaintiffs and

23   California Class members that they would repair, replace, or adjust defective parts on

24   the Vehicles."  (ECF No. 23 at ¶ 131).  Plaintiffs do not "allege the exact terms of the

25   warranty" at issue in this case.  *Williams*, 229 Cal. Rptr. at 608.  In *Maneely*, the Court

26   of Appeals affirmed summary judgment in favor of the defendant on a breach of express

27   warranty claim because the plaintiffs had not identified "a specific and unequivocal

28   written statement[.]"  108 F.3d at 1181.  The Court of Appeals found that the alleged

express warranty, contained in print and television advertising, failed because it "ma[de] no explicit guarantees." *Id.*  In this case, Plaintiffs have provided the Court with only a general description of the alleged express warranty without reference to its exact terms.  The Court grants Defendant's motion to dismiss Plaintiffs' breach of express warranty claim under the Song-Beverly Consumer Warranty Act.

### ii. Song-Beverly Consumer Warranty Act: Breach of Implied Warranty

Defendant contends that Plaintiffs fail to allege facts to support a breach of implied warranty under both California and Texas law.  Defendant contends that Plaintiffs' claim fails because the vehicles are still merchantable and Plaintiffs do not allege that the headlights failed to function or perform as designed.  Defendant contends that one named Plaintiff's claim fails because that Plaintiff traded in a vehicle to Defendant, and Defendant accepted the vehicle without regard to the alleged defect. Plaintiffs contend that Defendant breached the implied warranty of merchantability because the headlights are "deficient, unsafe and unreliable [and] not merely 'less effective' or 'different.'"  (ECF No. 34 at 25).  Plaintiffs contend that a vehicle with headlights that do not adequately illuminate the roadway "is not fit for its ordinary purposes." *Id.* at 26.

Under California law, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Cal. Civ. Code. § 1792.  This implied warranty expires "one year following the sale of new consumer goods to a retail buyer" if the duration of an express warranty is not stated.  Cal. Civ. Code § 1791.1(c). "Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law." *American Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr.2d 526, 529 (Cal. Ct. App. 1995), *as modified on denial of reh'g* (Sept. 21, 1995).  "Merchantable" goods are defined under California law to be "fit for the ordinary purposes for which such goods are used[.]"  Cal. Com. Code §

2314(2)(c).  "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Isip*, 65 Cal. Rptr.3d at 700.  The implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality." *American Suzuki*, 44 Cal. Rptr.2d at 529 (citation omitted).  A breach "occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Birdsong*, 590 F.3d at 958 (quoting *Mocek v. Alfa Leisure, Inc.*, 7 Cal. Rptr.3d 546, 549 (Cal. Ct. App. 2003)).

In *American Suzuki*, the California Court of Appeal dismissed a proposed class action complaint alleging a breach of implied warranty claim against a vehicle manufacturer. 44 Cal. Rptr.2d at 531-32.  The court found the consumers had failed to state a claim for breach of implied warranty, based on allegations of a defect that created an allegedly unsafe risk of roll-over accidents, because "the[] vehicles remained fit for their ordinary purpose." *Id.* at 531.  To support this finding, the court relied on a factual allegation that "the vast majority of the [vehicles] sold to the putative class did what they were supposed to do for as long as they were supposed to do it[.]" *Id.* (citation omitted).  In *American Suzuki*, the evidence provided at the motion to dismiss phase demonstrated "that only a small percentage of the [vehicles] sold during the class period have been involved in rollover accidents" – and the court identified there was no allegation that the plaintiffs suffered personal injuries or property damage. *Id.* at 528, 531.

The *American Suzuki* court concluded that "the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *Id.* at 529.  In *Isip*, the California Court of Appeal distinguished *American Suzuki* and this "descriptive language" by finding it applied only to "cases in which *no damage had been suffered*[.]" 65 Cal. Rptr.3d at 699.  The court in *Isip* rejected the *American Suzuki* standard for merchantability, and instead found that "[d]efining the warranty in terms

of a vehicle that is "in safe condition and substantially free of defects" is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used." *Id.* at 700.

In this case, Plaintiffs have alleged facts sufficient to support the inference that the vehicles at issue "lack[] . . . [the] fitness for ordinary use" while driving in dark or rural areas. *Birdsong*, 590 F.3d at 958 (citation omitted).  The Court concludes Plaintiffs have sufficiently pled a legally cognizable injury in being prevented from properly observing signage and pedestrians while driving the vehicles in dark or rural areas; *see supra* section III.C.1.  This factual allegation is sufficient to support the conclusion that Defendant breached the implied warranty of merchantability under Cal. Civ. Code. § 1792.  *See Isip*, 65 Cal. Rptr.3d at 700 ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability.").  Defendant's motion to dismiss Plaintiffs' breach of implied warranty claim under the Song-Beverly Consumer Warranty Act is denied.

### iii. Breach of Implied Warranty: Tex. Bus. & Com. Code § 2.314

Under Texas state law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Tex. Bus. & Com. Code § 2.314(a).  "For goods to breach this warranty, they must be defective—that is, they must be unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy."  *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) (citation omitted).  In *Brewer*, the Supreme Court of Texas rejected a claim for breach of the implied warranty of merchantability because the product at issue "merely fail[ed] to fulfill the precise expectations of the consumer because the product is more cumbersome to use than anticipated."  *Id.*  The plaintiffs in *Brewer* alleged that seatbelts advertised as automatic would sometimes fail to operate – but the plaintiffs could physically override the system to manually secure the restraint.  *Id.* at 56-57.  The court held that a product does not

breach the implied warranty "merely because it does not function as well as the buyer would like[.]"  *Id.* at 57.  A later case identified that *Brewer* did not find a defect because the seatbelt failure did not render the vehicle "[un]fit for its ordinary purpose of protecting the" driver – it merely made the vehicle "more difficult to use than anticipated[.]"  *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 688 (Tex. App. 2000).

In this case, unlike the plaintiffs in *Brewer*, Plaintiffs allege they suffer an alleged injury even after taking the affirmative step of engaging the vehicles' high beam headlights.  *See* ECF No. 23 at ¶ 31.  As discussed above, Plaintiffs have pled facts sufficient to support the conclusion that the headlights have caused Plaintiffs legally cognizable injury.  Defendant's motion to dismiss Plaintiffs' claims under Texas law is denied.

### iv. Magnuson-Moss Warranty Act

Defendant contends that Plaintiffs fail to allege a Magnuson-Moss Warranty Act claim because "Plaintiffs fail to state any valid state warranty claims[.]"  (ECF No. 27-1 at 30).  Plaintiffs contend that they have sufficiently pled a violation of the Magnuson-Moss Warranty Act if their warranty claims under state law survive.

The Magnuson-Moss Warranty Act creates a federal cause of action for breach of an implied warranty.  15 U.S.C. § 2310(d)(1)(B); *see Gusse v. Damon Corp.*, 470 F. Supp.2d 1110, 1116 (C.D. Cal. 2007) ("the Magnuson-Moss Act creates a separate federal cause of action for breach of an implied warranty").  The substantive elements of the Magnuson-Moss Warranty Act and the Song-Beverly Consumer Warranty Act "are the same[,]" and both "require the plaintiffs to plead successfully a breach of state warranty law."  *Birdsong*, 590 F.3d at 958 n.2.  The Court has concluded that Plaintiffs have alleged violations of California and Texas implied warranty laws – therefore, the Court denies Defendant's motion to dismiss Plaintiffs' Magnuson-Moss Warranty Act claim.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.").

### 7. Texas Deceptive Trade Practices Act

Defendant contends that the Texas Plaintiffs' Texas Deceptive Trade Practices Act ("DTPA") claims are time-barred by the statute of limitations. Defendant contends that the filing of a class action only tolls claims that the originally-named Plaintiffs had standing to bring. Defendant contends that the Texas Plaintiffs' DTPA claims should not be tolled because none of the originally-named Plaintiffs purchased their vehicles in Texas. Plaintiffs contend that Plaintiff Wilson's DTPA claim is not time-barred because filing the class action tolls the statute of limitations of the claims of potential class members. Plaintiffs concede that "Mr. Stewart's DTPA claims are time barred." (ECF No. 34 at 29).

The DTPA contains a two-year statute of limitations. Tex Bus. & Com. Code § 17.565. In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Following this decision, courts have held that the rule announced in *American Pipe* only tolls claims that the named plaintiff in the original class action has standing to pursue. *See In re Countrywide Fin. Corp.*, 860 F. Supp.2d 1062, 1068 (C.D. Cal. 2012).

### i. Plaintiff Stewart's DTPA Claim

In this case, the original Complaint was filed on October 19, 2015, and the Amended Complaint was filed on April 29, 2016. Defendant contends the date of the Amended Complaint should be used to determine when the statute of limitation expired, and Plaintiffs do not address this issue in their opposition. *See* ECF No. 27-1 at 27. Plaintiff Stewart allegedly purchased his vehicle in May 2013. (ECF No. 23 at ¶ 11). Using either the date the original Complaint was filed or the date the Amended Complaint was filed, the Court finds that Plaintiff Stewart's DTPA claim is barred by the two-year statute of limitations. The Court grants Defendant's motion to dismiss Plaintiff Stewart's DTPA claim.

### ii. Plaintiff Wilson's DTPA Claim

The original Complaint asserted six causes of action against Defendant by two named Plaintiffs: Plaintiff Armando J. Becerra, who allegedly purchased his vehicle in Escondido, California; and Plaintiff Guillermo Ruelas, who allegedly purchased his vehicle in Bakersfield, California. (ECF No. 1 at ¶¶ 7-8). The original Complaint does not include named Plaintiffs who purchased vehicles in Texas. In *American Pipe*, the Supreme Court identified that "the commencement of the *original* class suit tolls the running of the statute for all purported members of the class[.]" 414 U.S. at 553 (emphasis added). Subsequent courts in this Circuit have interpreted *American Pipe* to toll only the claims that the plaintiffs named in the first complaint filed in the case had standing to pursue. *See In re Countrywide*, 860 F. Supp.2d at 1068 ("This Court and others have achieved [a] balance by holding that *American Pipe* will only toll those claims that the named plaintiff in the original class action had standing to pursue."); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 722 F. Supp.3d 1157, 1167 (C.D. Cal. 2010) (declining to "extend[] *American Pipe* tolling to class action claims the original named plaintiffs had no standing to bring").

To demonstrate standing to sue in a class action complaint, "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations omitted). The original Complaint does not name Plaintiffs who reside in Texas. Plaintiffs bear the burden of demonstrating standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Court finds that neither of the two Plaintiffs named in the original Complaint had standing to pursue a DTPA claim on behalf of Plaintiff Wilson. *See In re Ditropan XL Antitrust Litig.*, 529 F. Supp.2d 1098, 1107 (N.D. Cal. 2007) ("at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring."). The Court grants

1   Defendant's motion to dismiss Plaintiff Wilson's DTPA claim.[2]

2   **8. Unjust Enrichment**

3   Defendant contends that Plaintiffs' claim for unjust enrichment is derivative of

4   their other state law allegations and cannot survive "as a standalone cause of action[.]"

5   (ECF No. 27-1 at 12, 30). Defendant contends that if Plaintiffs have adequately pled

6   substantive causes of action, their claim for unjust enrichment should be denied because

7   Plaintiffs have pled a contract between the parties. Defendant contends that Plaintiffs'

8   allegation of an express warranty between the parties requires dismissal of the claim for

9   unjust enrichment. Plaintiffs contend they have adequately pled their unjust enrichment

10  claim because it is grounded in equitable principles of restitution. Plaintiffs contend

11  they may plead alternative statements relating to their claim of express warranty

12  between the parties.

13  "[I]n California, there is not a standalone cause of action for 'unjust enrichment,'

14  which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d

15  753, 762 (9th Cir. 2015) (citations omitted). However, "[u]nder California law, unjust

16  enrichment is an action in quasi-contract and is not cognizable when there is a valid and

17  enforceable contract between the parties." *Cont'l Cas. Co. v. Enodis Corp.*, 417 Fed.

18  Appx. 668, 670 (9th Cir. 2011). Plaintiffs have alleged the existence of a valid contract

19  between the parties to support their claim for breach of express warranty claim; *see* ECF

20  No. 23 at ¶ 131.

21  Federal Rule of Procedure 8(d) allows parties to plead claims in the alternative

22  or in an inconsistent manner, and courts in this Circuit have allowed unjust enrichment

23  and breach of contract claims to proceed simultaneously in one action. *See* Fed. R. Civ.

24  P. 8(d)(2-3) ("[a] party may set out 2 or more statements of a claim or defense

25  ———————————

26  [2] Plaintiffs' eighth cause of action in the Amended Complaint includes claims pursuant to various state laws (including the District of Columbia). The named

27  Plaintiffs in the Amended Complaint allegedly purchased vehicles in California and Texas. Plaintiffs' eighth cause of action does not include claims pursuant to California or Texas law. (ECF No. 23 at ¶¶ 165-214). The Court grants Defendant's motion to

28  dismiss Plaintiffs' eighth cause of action, because the named Plaintiffs in the Amended Complaint bring claims under only California and Texas state laws.

1    alternatively . . . [a] party may state as many separate claims or defenses as it has,

2    regardless of consistency."); *Longest v. Green Tree Servicing LLC*, 74 F. Supp.3d 1289,

3    1302 (C.D. Cal. 2015) (citing cases "permitt[ing] unjust enrichment and breach of

4    contract claims to proceed simultaneously").  The Court finds that Plaintiffs have pled

5    their claim for unjust enrichment in the alternative to their breach of express warranty

6    claim.  *See Longest*, 74 F. Supp.3d at 1302 (finding that the "plaintiffs have pleaded

7    their contract and unjust enrichment claims in the alternative, and [the court] declines

8    to dismiss the unjust enrichment claims on these grounds.").  The Court denies

9    Defendant's motion to dismiss Plaintiffs' unjust enrichment claim.

10          **9. Request for Injunctive Relief**

11          Defendant contends that the primary jurisdiction doctrine and the doctrine of

12   conflict preemption bar Plaintiffs' claim for the institution of a recall.  *See* ECF No. 23

13   at 62.  Defendant contends that the remedy of instituting a recall "is precisely the type

14   of remedy that Congress established NHTSA [National Highway Traffic Safety

15   Administration] to investigate[.]"  (ECF No. 27-1 at 31).  Defendant contends that

16   Congress has created sixty pages of federal regulations concerning the design and

17   brightness of headlight systems.  Defendant contends that the federal Safety Act

18   contains congressional directives on whether and how to institute a motor vehicle recall.

19          Plaintiffs contend that the primary jurisdiction doctrine is inapplicable because

20   Plaintiffs have not challenged a specific federal safety standard of regulation, or sought

21   to interfere with any ongoing federal investigation.  Plaintiffs contend that consumer

22   motor vehicle safety is an area traditionally reserved for state regulation.  Plaintiffs

23   contend that courts in this Circuit have found that judicially-imposed recalls are not

24   conflict preempted by federal law.

25          Under the Supremacy Clause of the United States Constitution, "state law that

26   conflicts with federal law is without effect."  *Cipollone v. Liggett Grp.*, 505 U.S. 504,

27   516 (1992) (citation omitted).  In the absence of "an express provision for preemption,"

28   there are two types of preemption: field preemption and conflict preemption.  *Crosby*

*v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  In this case, Defendant contends that conflict preemption applies to Plaintiffs' request for a judicially-instituted recall because the federal NHTSA is tasked with investigating alleged vehicle defects and instituting motor vehicle recalls.  The Supreme Court has held that

> [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied . . . we start with the assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citations and quotation marks omitted).  If Congress has enacted law or regulations "in a field which the States have traditionally occupied," courts must apply a presumption against conflict preemption "because respect for the states as independent sovereigns in our federal system leads us to assume that Congress does not cavalierly pre-empt state-law causes of action."  *McDaniel v. Wells Fargo Invs., LLC*, 717 F.3d 668, 675 (9th Cir. 2013) (quoting *Wyeth*, 555 U.S. at 565 n.3).  Courts are "reluctant to invalidate . . . state legislation in the field of safety where the propriety of local regulation has long been recognized."  *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 443 (1978) (citation omitted).  "In no field has this deference to state regulation been greater than that of highway safety regulation."  *Id.*

Courts in this Circuit have concluded that a court-instituted motor vehicle recall "is a remedy rather than a substantive field of regulation" – and accordingly, "the regulatory field in question is more properly defined as that of motor vehicle safety." *In re Toyota Motor Corp. Unintended Accel. Mktg.*, 754 F. Supp.2d 1145, 1196 (C.D. Cal. 2010); *Chamberlan v. Ford Motor Co.*, 314 F. Supp.2d 953, 958-59 (N.D. Cal. 2004) (finding that "[m]otor vehicle safety is an area of traditional State police power" and that "States historically have provided injunctive remedies in the field of vehicle safety.").  The Safety Act allows citizens to petition the Department of Transportation to investigate a potential defect, and provides that any remedy through the petition process "is in addition to other rights and remedies under other laws of the United States or a State."  49 U.S.C. § 30103(d); *see also* 49 U.S.C. § 30118(b) ("The

1  Secretary [of Transportation] may make a final decision that a motor vehicle . . .
2  contains a defect related to motor vehicle safety . . . Any interested person also shall be
3  given an opportunity to present information, views, and arguments.").

4      The Court applies the presumption against conflict preemption against
5  Defendant, and denies Defendant's motion to dismiss Plaintiffs' claim for injunctive
6  relief in the form of a recall.  *See also Chamberlan*, 314 F. Supp. 2d at 964 (applying
7  conflict preemption to preserve a claim for judicially-instituted recall because "the plain
8  meaning of the language in the savings clause . . . is that [] State law remedies are
9  preserved.").

10  **IV. Conclusion**

11      IT IS HEREBY ORDERED that the Motion to Dismiss the Amended Complaint
12  filed by Defendant (ECF No. 27) is GRANTED in part and DENIED in part.  Plaintiffs'
13  fourth cause of action for breach of Song-Beverly Consumer Warranty Act (Express
14  Warranty) claim is dismissed.  Plaintiffs' seventh cause of action for violations of the
15  DTPA by Plaintiffs Stewart and Wilson is dismissed as to both Plaintiffs.  Plaintiffs'
16  eighth cause of action is dismissed.  In all other respects, Defendant's Motion to
17  Dismiss the Amended Complaint (ECF No. 27) is DENIED.

18  DATED:  March 10, 2017

19
20  **WILLIAM Q. HAYES**
United States District Judge

21
22
23
24
25
26
27
28